# AGREEMENT FOR PURCHASE AND SALE OF BUSINESS

THIS AGREEMENT is made on _April 16_, 2019, by **Ghost Brewing, LLC**, of Harrisburg, Pennsylvania ("Buyer"), and **Rubber Soul Brewing Company, LLC, Rubber Soul Tap House, LLC and Gold Water Capital Group, LLC**, of Harrisburg, Pennsylvania (collectively "Rubber Soul"/ "Seller").

## ARTICLE I.
## PURCHASE AND SALE

1.01. In consideration of the mutual promises and conditions contained in this agreement, Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller, on the terms, conditions, warranties and representations set forth in this Agreement:

(a) the business currently owned and operated by Rubber Soul, being conducted under the above-referenced LLCs ("the Business");

(b) all of the stock in trade, inventory and merchandise of the Business;

(c) all of the fixtures, equipment, furnishings, beer making equipment and other tangible assets of the Business; and

(d) all trade names, business names, goodwill, and other tangible or intangible assets of the Business, including but not limited to those contained on Exhibit "A".

## ARTICLE II.
## AMOUNT OF PURCHASE PRICE

2.01. The total purchase price to be paid by Buyer to Seller for all the properties, assets and rights of the Business described in this Agreement ("Purchase Price") shall be $200,000.

2.02. The Purchase Price is allocated between Buyer and Seller to cover the costs of the following:

    Inventory
    Fixtures & Equipment
    Goodwill, Tradename & Other Tangible Assets
    Noncompetition Provision

## ARTICLE III.
## PAYMENT OF PURCHASE PRICE

3.01. The total Purchase Price shall be paid as follows:

(a) $1,000 has been paid for consideration of this Agreement of Sale to Seller by Buyer;

(b) the sum of $199,000 in cash, cashier's check or equivalent certified funds within ten (10) day of the contingent approval of the United States Bankruptcy Court as set forth hereinafter.

## ARTICLE IV.
## CLOSING

4.01. The closing of the sale and purchase of the Business ("the Closing") shall take place at a date and time to be determined and mutually agreed upon by Buyer and Seller, but shall be within ten (10) days following written notification to Buyer of the contingent approval of the United States Bankruptcy Court.

4.02. At the closing the Seller shall deliver:
(a) clear and marketable title and ownership to Buyer of all assets subject to this Agreement free and clear of any liens, including all beer recipes and current inventory;
(b) certificate of the United States Bankruptcy Court that the property being conveyed to Buyer is free and clear of any creditor claims and is no longer part of any jurisdiction fo the Bankruptcy Court;
(c) execute an Assignment of Assumed Name Certificate;
(d) execute any other documents necessary to finalize this Agreement; and
(e) Bill of Sale of all assets, tangible and intangible subject to this Agreement.

4.03. At the Closing the Buyer shall:
(a) pay all remaining moneys owed to Seller; and
(b) execute any other documents necessary to finalize this Agreement.

## ARTICLE V.
## REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS BY SELLER

5.01. Seller agrees and warrants and represents to Buyer that:
(a) the financial records for the Business, previously inspected by Buyer, contain a full and complete record and account of the financial affairs of this Business and truthfully set forth all liabilities, assets and other matters pertaining to the fiscal or financial condition of this Business through the date of inspection and furthermore, that there have been no material changes in the financial condition of this Business since that time except for transactions normal to this Business;
(b) Seller is the lawful owner of this Business and has good right and due authorization to sell it. At the time of signing this Agreement, Seller neither knows nor has reason to know of the existence of any outstanding claim or title, or interest, or lien in, to, or on this Business except as shown on the financial records of this Business inspected by Buyer;
(c) all fixtures and equipment sold pursuant to this Agreement are free and clear of any lien (including UCC financing statements) and/or debt unless otherwise set forth in a written statement from Seller to Buyer;
(d) Seller owes no obligations and has contracted no liabilities affecting this Business or which might affect the consummation of the purchase and sale described in this Agreement that are not shown on the financial records inspected by Buyer and that have not been expressly disclosed to Buyer;
(e) Seller agrees and represents that no taxes exist which would form any lien or encumbrance upon any asset, tangible or intangible, being purchased pursuant to this Agreement;
(f) any accounts payable due and owing as of the Closing shall remain the responsibility of Seller and shall be paid promptly as they become due and payable;
(g) Seller agrees to indemnify and hold Buyer harmless from any and all claims, causes of actions, damages, or debts, including legal fees, resulting from any actions, occurrences or events occurring prior to the Closing;
(h) all mechanical equipment sold pursuant to this Agreement is in good working condition; and
(i) Seller shall provide to Buyer three (3) months of full-time training in the operations and brewing techniques of the current recipes by its current Brewmaster.

## ARTICLE VI.
## REPRESENTATIONS, WARRANTIES AND AGREEMENTS BY BUYER

6.01. Buyer agrees and warrants and represents to Seller that Buyer will duly notify all authorities, suppliers, creditors, and/or other entities that Buyer is to be responsible for all liabilities associated with the operation of the Business, including without limitation withholding taxes, social security taxes, unemployment contributions, salaries, and purchases incurred after the Closing, and Buyer specifically agrees to assume such liabilities as of the Closing.

## ARTICLE VII.
## COMPLIANCE WITH BULK SALES LAW

7.01. Seller is currently in bankruptcy under the jurisdiction of the United States Bankrupt Court having provided a list of all debtors and creditors. Assets of this transfer are requiring approval of said Court and, therefore, the Bulk Sales Law is not application to this transaction.

## ARTICLE VIII.
## TRADE NAME, TELEPHONE NUMBER AND POST OFFICE BOX

8.01. Seller assigns to Buyer the exclusive right to use the trade or business name, company names or similar company name, company brands and recipes (22 known). Seller further agrees not to use, or authorize others to use, the trade or business name, company names or similar company names, company brands and recipes (22 known), in the United States.

8.02. Seller agrees to allow Buyer to assume the Business telephone number, current advertising arrangements, current advertising arrangements, social media campaigns and the Post Office Box, if any, currently used by the Business for a mailing address.

## ARTICLE IX.
## DELIVERY OF BOOKS AND RECORDS

9.01. All books, records, files, documents and papers, including customer lists and all records of the accounts of customers used in the operation of or relating to the Business shall be transferred and delivered to Buyer at the Closing.

9.02. All of these books, records, files, documents and papers shall be available to Seller at any reasonable time for any proper purpose, and Seller has the right to freely examine and to copy all such materials prior to closing.

## ARTICLE X.
## NON-ASSUMPTION OF LIABILITIES

10.01. Unless otherwise expressly provided for in this agreement, the liabilities and obligations incurred by Seller prior to the Closing are not assumed by Buyer but continue as liabilities and obligations of Seller and shall be solely paid by Seller.

10.02. In the event Buyer is required to pay after the Closing any valid lien, debt, or expense incurred by Seller prior to the Closing Date, Buyer shall have the right to offset any such lien, debt, or expense actually paid by Buyer, which is the valid and legal obligation of the Seller, against any payment owed to Seller by Buyer.

## ARTICLE XI.
## INDEMNIFICATION OF SELLER

11.01. Buyer will indemnify and hold Seller and the property of Seller free and harmless from any and all claims, losses, damages, injuries and liabilities arising from or in connection with the operation of the Business after the Closing.

## ARTICLE XII.
## DEFAULT

12.01. After execution of this Agreement by the parties, default shall consist in the failure of either party to perform its respective obligations and duties and/or a breach of a warranty or covenant in this agreement.

12.02. In the event of default of either party, Seller or Buyer shall have the right to sue for specific performance and/or sue for damages in addition to any other relief provided in this Agreement or attached Exhibits. In a suit for default, reasonable attorney fees shall be recoverable by the prevailing party.

## ARTICLE XIII.
## COSTS AND EXPENSES

13.01. The costs and expenses incurred in finalizing the purchase and sale described in this Agreement in the manner prescribed by this Agreement shall be borne as follows:
(a) Buyer and Seller shall each pay their own costs and expenses.

## ARTICLE XIV.
## RESTRICTIVE COVENANTS

14.01. The Seller expressly agrees that for a period of two (2) years following the execution of this Agreement, they will not:

(a) operate a brewery or brew beer within a 300 mile radius of the current brewery location;
(b) take any steps which would harm the good name or goodwill being sold and transferred under this Agreement.

14.02. The Seller shall not for a period of two (2) years immediately following the execution of this Agreement, regardless of any reasons or cause, either directly or indirectly:
(a) make known to any person, firm or corporation the names and addresses of any of the customers of the Seller or Buyer or any other information pertaining to them; or
(b) call on, solicit, or take away, or attempt to call on, solicit, or take away any of the customers of the Seller on whom the Seller called or with whom they became acquainted during ownership of this Business either for Seller or for any other person, firm or corporation.

## ARTICLE XV.
## GENERAL AND ADMINISTRATIVE PROVISIONS

15.01. Parties Bound. This Agreement shall be binding upon and inure to the benefit of the Parties to this Agreement and their respective heirs, executors, administrators, legal representatives, successors and assigns.

15.02. Assignment. The Seller shall have no right to transfer or assign their interest in this Agreement without the prior written consent of the Buyer.

15.03. Corporate Authority. If any party to this Agreement is a legal entity (partnership, corporation and/or trust), such party represents to the other that this Agreement, the transaction contemplated in this Agreement, and the execution and delivery hereof, have been duly authorized by all necessary partnership, corporate or trust proceedings and actions, including without limitation the action on the part of the directors, if the party is a corporation. Certified copies of such corporate or other resolutions authorizing this transaction shall upon request be delivered at the Closing.

15.04. Use of Pronouns. The use of the neuter singular pronoun to refer to the Parties described in this Agreement shall be deemed a proper reference even though the Parties may be an individual, a partnership, a corporation, or group of two or more individuals, partnerships or corporations. The necessary grammatical changes required to make the provisions of this Agreement apply in the plural sense where there is more than one party to this Agreement, and to either corporations, partnerships or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

15.05. Governing Law. This Agreement shall be subject to and governed by the laws of the State of Pennsylvania.

15.06. Severability. If any provision of this Agreement should, for any reason, be held violative of any applicable law, and so much of this Agreement be held unenforceable, then the invalidity of such a specific provision in this Agreement shall not be held to invalidate any other provisions in this Agreement, which other provisions shall remain in full force and effect unless removal of the invalid provisions destroys the legitimate purposes of this Agreement, in which event this Agreement shall be canceled.

15.07. Entire Agreement. This Agreement represents the entire understanding of the Parties hereto. There are no oral agreements, understandings, or representations made by any party to this Agreement that are outside of this Agreement and are not expressly stated in it.

15.08. Notices. All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as properly given if mailed from within the United States by first class mail, postage prepaid, and addressed as follows:

    to Seller:    c/o Lawrence Young, Esquire
                        CGA Law Firm
                        135 North George Street
                        York, PA  17401

    to Buyer:    711 N 2nd Street, Suite 2
                        Harrisburg, PA 17102

A party may change the address for notice by giving of such change to the other party in writing.

SIGNED, ACCEPTED, AND AGREED TO on ___April 16___ 2019, by the undersigned parties, who acknowledge that they have read and understand this Agreement and the Attachments and Schedules to it and they execute this legal document voluntarily and of their own free will.

GHOST BREWING, LLC

_Donica M Disher_
Witness

_[signature]_

By: _Michael Martini_

Title: _Owner_

RUBBER SOUL BREWING COMPANY, LLC

_[signature]_

_____
Witness

By: _FRANK HRESTAK_

Title: _MANAGING MEMBER_

RUBBER SOUL TAP HOUSE, LLC

_[signature]_

_____
Witness

By: _FRANK HRESTAK_

Title: _MANAGING MEMBER_

GOLD WATER CAPITAL GROUP, LLC

_[signature]_

_____
Witness

By: _FRANK HRESTAK_

Title: _MANAGING MEMBER_

Exhibit "A"
Rubber Soul Brewing Company, LLC, Rubber Soul Tap House, LLC
and Gold Water Capital Group, LLC

1. All patents, patent rights, trademarks, copyrights, branding, inventions, processes and tradenames now in possession or owned or controlled by seller.

2. All goodwill of any of the three LLCs or trade names, excepting only money in the bank or on-hand or bills and accounts receivable on goods, wares, merchandise, materials or supplies already sold.

3. All currently-held inventory, all rights to control operations and ownership of website or other internet marketing, all physical, electronic or contracted promotional products and advertising, all recipes (22 known) for beers which have been produced, sold or created, but not produced or sold of any of the above-named entities.

4. The exclusive right to use the name(s) Rubber Soul Brewing Company, LLC, Rubber Soul Tap House, LLC, and/or Gold Water Capital Group, LLC or any fictitious names held by them.

5. The exclusive right to the ownership and use of all recipes of Rubber Soul Brewing Company, LLC, Rubber Soul Tap House, LLC and/or Gold Water Capital Group, LLC, including but not limited to:

> 700 C Bury Rye IPA Blue Summer Wheat Chamois Crème Ale Dropout Double IPA Eldo Amber Ale FYF Double IPA
> Gravel Hill Coffee Stout
> Highwheel IPA Jari Lager Paceline Session IPA Other Woman Temporada Saison Urban Honey
> WheelSucker Berlinerweisse
> Dombrewski
> Fun Box October Fest (Fall Ale)
> Garage Racer (TBD) Old Toad Spiced Ale
> Crooked Run Road Porter
> LOG Pile IPA Rouleur Saison Ale